# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| THOMAS E. MCELLIGOTT, <br> MICHELLE F. MCELLIGOTT, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED PARCEL SERVICE, INC., <br> a Delaware corporation <br><br> Defendant. | Case No. 17-CV-03491 <br><br> Judge Sara L. Ellis <br><br><br> **Jury Demanded** |

## SECOND AMENDED COMPLAINT

Plaintiffs Thomas E. and Michelle F. McElligott, by their court-appointed counsel, hereby complain of defendant United Parcel Service, Inc., alleging as follows:

### Parties

1. Plaintiffs Thomas E. McElligott ("Thomas") and Michelle F. McElligott ("Michelle") are husband and wife, residing in West Chicago, Illinois, and citizens of the State of Illinois.

2. Defendant United Parcel Service, Inc. ("UPS") is a Delaware corporation with its principal place of business in the State of Georgia.

### Jurisdiction and Venue

3. This Court has jurisdiction over Counts I and II pursuant to 28 U.S.C. § 1331 because those counts allege civil actions arising under the laws of the United States. This Court has jurisdiction over Count III under 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000 exclusive of interest and costs and is between citizens of different states. Alternatively, this Court has jurisdiction over Count III under 28 U.S.C. § 1337, because

it is related to other claims in this action within the Court's original jurisdiction that form a part of the same case or controversy under Article III of the United States Constitution.

4. Venue for this action is properly placed in this District under 28 U.S.C. § 1391 because it is a judicial district in which the Defendant resides or in which a substantial part of the events or omissions giving rise to the claim occurred.

**Factual Allegations**

5. In 2014, plaintiffs were both employed by UPS as part-time "loaders" at the UPS facility located in Addison, IL. Their job responsibilities included the loading and unloading of parcels into delivery trucks, and their job shifts often were scheduled for late in the evening into the early morning.

6. In September 2014, Michelle applied for a promotion to a position in the security department. At that time, she was promoted over others with greater seniority to the position of security officer at the Addison facility. Her immediate supervisor was an individual named David R. Pellicane. Mr. Pellicane was involved in Michelle's promotion, caused it to occur and approved it.

7. After being promoted to the position of security officer, Mr. Pellicane, by explicit and implicit actions and statements, sought to sexually harass or engage in sexual activity with Michelle. During their work periods, Mr. Pellicane would stand extremely close to Michelle or lean over her in a way that made it clear that he wanted contact. He would take opportunities to rub against her and attempt to put his arms around her. He would complement her clothing and make statements such as "we take care of each other here" and "if you are good to me, I'll be good to you." He would schedule her shifts, so that she would be working at times that her husband was not, and later attempted to reach her by phone at her home. He stated that he had

influence with both UPS and union officials and could obtain further promotions for Michelle; later he threatened that he had ways of demoting or terminating her.

8. Michelle, however, resisted such advances and did not engage in sexual activity with Mr. Pellicane. Within a few months after Michelle's promotion and because of her refusal to engage in sexual relations, Mr. Pellicane began to seek ways to remove Michelle from her position. On or about March 26th, 2015, Pellicane caused UPS to terminate Michelle from her position.

9. Michelle was told that she was being terminated for mis-punching her time cards. However, this explanation was pre-textual and intended to avoid claims for sexual harassment and sexual discrimination.

10. UPS terminated her from her position because she failed and refused to engage in sexual relations with her immediate supervisor. After Michelle was terminated, her position was filled by a male employee.

11. After Michelle's termination, Thomas continued to work part-time as a loader for the company. However, Thomas complained to UPS employees about Michelle's termination and the unlawful reasons for such termination. Thomas complained to individuals in UPS' human resources department and to his immediate supervisor that Michelle was terminated at the instigation of her immediate supervisor, who had harassed Michelle.

12. When Thomas complained to the company's management regarding the discriminatory practices against Michelle, UPS retaliated against him by terminating his employment.

**Plaintiffs' Charges with the EEOC**

13. In July 2015, Michelle and Thomas went together to the Chicago District Office of the Illinois Department of Human Rights and the Equal Employment Opportunity Commission ("EEOC") to file charges against UPS relating to Michelle's wrongful termination.

14. During their July 2015 visit to the EEOC, Michelle was interviewed by an EEOC interviewer. During the interview, Michelle explained that she had been sexually harassed and that she believed the reasons for her termination were pre-textual.

15. During the July 2015 interview, the EEOC interviewer asked Michelle if she had any "evidence" of the sexual harassment. When Michelle said that she was not aware of any evidence other than her own testimony, the EEOC interviewer told Michelle that (1) she could not file a charge with the EEOC without additional evidence, and (2) because she was a union member of the International Brotherhood of Teamsters, she would need to file a complaint with the National Labor Relations Board ("NLRB"). Relying on the false information provided by the EEOC interviewer, Michelle did not file a formal charge against UPS during the July 2015 meeting, and shortly after the meeting with the EEOC, Michelle filed a charge with the NLRB.

16. Relying on the false information provided by the EEOC, both Michelle and Thomas pursued charges and appeals before the NLRB rather than the EEOC. While Michelle and Thomas were pursuing their claims before the NLRB, Michelle believed that she could not pursue her sexual harassment claims before the EEOC because she had no additional evidence of the sexual harassment and because she was a Teamster.

17. In March 2017, after the dismissal of their claims and appeals before the NLRB, Michelle and Thomas decided to go back to the EEOC to try again to file charges pertaining to Michelle's sexual harassment and wrongful termination and Thomas's retaliatory discharge relating to his reporting of Michelle's harassment.

18. During the March 2017 visit to the EEOC, Michelle was interviewed first and then Thomas was called in to join her interview and they were interviewed together. Thomas was then interviewed again separately. During both interviews, Thomas explained that he had complained to the company's management regarding the discriminatory practices against Michelle and that UPS had retaliated against him by terminating his employment.

19. The EEOC issued Michelle a Notice of Right to Sue on March 9, 2017, a copy of which is attached hereto Exhibit A.

20. The EEOC issued Thomas a Notice of Right to Sue on March 6, 2017, a copy of which is attached hereto Exhibit B.

**COUNT I**

21. Plaintiff Michelle re-alleges paragraphs 1 through 8 above as though fully set forth herein

22. Michelle was told that she was being terminated for mis-punching her time cards. However, this explanation was pre-textual and intended to avoid claims for sexual harassment and sexual discrimination.

23. UPS terminated her from her position because she failed and refused to engage in sexual relations with her immediate supervisor. After Michelle was terminated, her position was filled by a male employee.

24. Michelle duly filed her charges with the Illinois Department of Human Rights and the EEOC.

25. The EEOC issued Michelle a Notice of Right to Sue on March 9, 2017.

26. As a result of UPS' unlawful discrimination, Michelle has suffered lost wages and benefits, severe emotional distress, humiliation, anguish and suffering.

## COUNT II

15. Plaintiff Thomas re-alleges paragraphs 1 through 14 above as though fully set forth herein.

16. After Michelle's termination, Thomas continued to work part-time as a loader for the company. However, Thomas complained to UPS employees about Michelle's termination and the unlawful reasons for such termination. Thomas complained to individuals in UPS' human resources department and to his immediate supervisor that Michelle was terminated at the instigation of her immediate supervisor, who had harassed Michelle.

17. Thomas' complaints to UPS' management in opposition to unlawful discrimination constituted protected activity under applicable law.

18. When Thomas complained to the company's management regarding the discriminatory practices against Michelle, UPS retaliated against him by terminating his employment.

19. Thomas duly filed his charges with the Illinois Department of Human Rights and the EEOC.

20. The EEOC issued Thomas a Notice of Right to Sue on March 6, 2017.

21. As a result of UPS's unlawful retaliation, Thomas has suffered lost wages and benefits, severe emotional distress, humiliation, anguish and suffering.

## COUNT III

22. Plaintiff Michelle re-alleges paragraphs 1 through 8 above as fully set forth herein.

23. On or about February 27, 2015, Thomas was also employed part-time at Bill Kay GMC ("Kay GMC"), an automobile dealer with a service department.

24. In late February 2015, Kay GMC agreed to service a semi-marked police car for the Village of Downers Grove. The car was experiencing issues with its "check engine" warning light. In order to diagnose the issue, Kay GMC obtained the permission of the Downers Grove Police Department to have Kay GMC's employees drive the police car as part of their ordinary daily activities, so as to obtain a service history on the warning light.

25. On February 26, 2015, Kay GMC gave Thomas possession of the car and directed him to utilize it in his daily activities, so as to generate a service history. On that evening, Thomas and Michelle drove the police car to their jobs at UPS and parked it outside of the UPS facility. Thomas and Michelle informed UPS management and several UPS employees of their use of the car and the reason for it.

26. On February 27, 2015, Thomas and Michelle's daughter celebrated her wedding ceremony. Thomas and Michelle had each sought the day off from UPS for purposes of attending their daughter's wedding, reception and other festivities. Thomas obtained the day off but Mr. Pellicane refused to grant Michelle the day off. As a result, Michelle was forced to work that evening.

27. In order to travel to the UPS facility for her job, Michelle drove the Downers Grove police car and parked it outside the UPS facility, as had been done the night before.

28. That evening, Mr. Pellicane caused another UPS security officer to call the Addison police department, to inform them of the Downers Grove police vehicle parked in the UPS parking lot, and to identify Michelle as the driver. Neither Mr. Pellicane or his subordinate made any inquiry of Michelle as to the circumstances that led her to drive to the UPS facility in the police car. Neither Mr. Pellicane nor his subordinate notified the Addison police department that Michelle's husband had been authorized to drive the police car.

29. This action was undertaken maliciously and with the intent that Michelle be arrested and provide UPS a reason to terminate her. From UPS' point of view, there was an absence of probable cause.

30. The actions of Mr. Pellicane and his subordinate led to the arrest of Michelle and her being charged with a misdemeanor criminal trespass to vehicle.

31. On January 10, 2017, the charge against Michelle was tried in the Circuit Court of Dupage County, and Michelle was found not guilty of the charge.

32. Michelle has suffered severe emotional destress, humiliation, anguish and suffering, incurred attorneys' fees, lost wages from having to attend court appearances, and was prevented by the pending criminal charge from being able to gain substitute employment.

WHEREFORE, Plaintiff Michelle McElligott respectfully requests that this Honorable Court enter judgment in her favor and against UPS on Counts I and III, awarding her damages on her claims, including back pay, front pay, lost benefits, compensatory and punitive damages and awarding her costs, attorneys' fees and such other and further relief as this Court deems just; and Plaintiff Thomas McElligott respectfully requests that this Honorable Court enter judgment in his favor and against UPS on Count II, awarding him damages on his claims, including back pay, front pay, lost benefits, compensatory and punitive damages and awarding him costs, attorneys' fees and such other and further relief as this Court deems just.

### *Jury Demand*

Plaintiffs demand a jury by trial on all claims so triable.

Dated: November 15, 2017                    Respectfully submitted,

                                            THOMAS E. MCELLIGOTT and
                                            MICHELLE F. MCELLIGOTT


                                            By:   /s/ Timothy J. Patenode
                                                  One of Their Attorneys


Timothy J. Patenode
Matthew Haws
Katten Muchin Rosenman LLP
525 West Monroe Street, Ste. 1900
Chicago, Illinois 60661-3693
Telephone: (312) 902-5200
Facsimile: (312) 902-1061
128213922

## **CERTIFICATE OF SERVICE**

   I, J Matthew Haws, an attorney in this matter, hereby certify that on November 15, 2017, I caused a copy of the forgoing to be filed electronically with the Clerk of the Court using CM/ECF system, which will send notification of such filing to all counsel of record.

                              /s/ J Matthew Haws