UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| THOMAS E. MCELLIGOTT, MICHELLE F. MCELLIGOTT, | ) ) ) | |
| Plaintiffs, | ) ) | No. 17 C 3491 |
| v. | ) ) | Judge Sara L. Ellis |
| UNITED PARCEL SERVICE, INC., a Delaware corporation, | ) ) ) | |
| Defendant. | ) ) | |

## OPINION AND ORDER

Plaintiffs Michelle and Thomas McElligott both worked for Defendant United Parcel Service, Inc. ("UPS") at UPS' Addison, Illinois facility until UPS terminated their respective employment approximately a year apart. The McElligotts claim that UPS terminated Michelle because she refused to engage in sexual relations with her supervisor, while Thomas claims his termination was in retaliation for complaining about the sexual harassment Michelle suffered. They bring this action against UPS, with Michelle bringing claims for sexual harassment and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* (Count I), and state law malicious prosecution (Count III), and Thomas pursuing a claim for unlawful retaliation in violation of Title VII (Count II). UPS moves to dismiss the Title VII claims. Because the Court cannot determine whether equitable tolling makes Michelle's Title VII claim timely, the Court allows her Title VII claim to proceed to discovery. But the Court dismisses Thomas' Title VII retaliation claim because Thomas did not adequately exhaust his administrative remedies.

# BACKGROUND[1]

In 2014, the McElligotts both worked at UPS as part-time loaders at UPS' facility in Addison, Illinois. In September 2014, Michelle applied for and received a position as a security officer in the security department at the Addison facility. UPS chose her for this position over others with greater seniority. Her immediate supervisor in the security department was David R. Pellicane, who was involved in Michelle's selection as a security officer. After Michelle began working as a security officer, Pellicane engaged in sexually harassing behavior toward her. Pellicane stated he had influence with UPS and union officials and could obtain further promotions for Michelle. But because Michelle resisted Pellicane's advances, Pellicane soon began to threaten that he could demote or terminate her and actively sought out ways to do so. On March 26, 2015, UPS terminated Michelle's employment, purportedly for mispunching her time cards.

Meanwhile, Thomas continued working as a part-time loader for UPS, but he complained to UPS employees, including individuals in UPS' human resources department, about Michelle's termination, the harassment she suffered, and the fact that her immediate supervisor had her fired. UPS then terminated Thomas' employment.

---

[1] The facts in the background section are taken from the second amended complaint and exhibits attached thereto and are presumed true for the purpose of resolving UPS' motion to dismiss. *See Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011); *Local 15, Int'l Bhd. of Elec. Workers, AFL-CIO v. Exelon Corp.*, 495 F.3d 779, 782 (7th Cir. 2007). A court normally cannot consider extrinsic evidence without converting a motion to dismiss into one for summary judgment. *Hecker v. Deere & Co.*, 556 F.3d 575, 582–83 (7th Cir. 2009). Where a document is referenced in the complaint and central to the McElligotts' claims, however, the Court may consider it in ruling on the motion to dismiss. *Id.*

The McElligotts did not attach their EEOC charges to the second amended complaint. UPS submits these charges as exhibits to the motion to dismiss. Because the Court must consider the allegations in the charges to determine the timeliness and proper scope of the McElligotts' claims and because the claims discussed in the charges are referenced in the second amended complaint and central to their claims, they are properly before the Court. *See Davis v. Central Can Co.*, No. 05 C 1563, 2006 WL 2255895, at *4 (N.D. Ill. Aug. 4, 2006) (collecting cases). UPS also attaches documents related to Michelle's NLRB charge. The Court considers these only for purposes of establishing the dates of when she filed her NLRB charge and when the NLRB's appeal process concluded.

In July 2015, the McElligotts went to the Chicago District Office of the Equal Employment Opportunity Commission ("EEOC") to file charges against UPS related to Michelle's termination.[2] An EEOC employee interviewed Michelle, and Michelle explained that she had been sexually harassed and believed her termination was pretextual. The EEOC interviewer asked Michelle if she had any evidence of the sexual harassment. Michelle responded that she only had her own testimony. The EEOC interviewer told Michelle she could not file an EEOC charge without additional evidence and, because she belonged to a union, she needed to file a complaint with the National Labor Relations Board ("NLRB"). Michelle relied on this information and did not file a formal charge with the EEOC in July 2015 but instead filed a charge with the NLRB on July 27, 2015. The NLRB dismissed Michelle's charge on October 26, 2015 and denied her appeal on February 9, 2016. Thomas also pursued a claim before the NLRB.

After the NLRB denied both Michelle and Thomas' claims and appeals, the McElligotts returned to the EEOC in March 2017. During this visit, Michelle was interviewed first, after which Thomas joined her interview and then was interviewed separately. In both interviews, Thomas explained he had complained to UPS' management concerning the discriminatory practices against Michelle and that UPS retaliated against him by terminating his employment. The EEOC issued Thomas a Notice of Right to Sue on March 6, 2017. Michelle received her Notice of Right to Sue on March 9, 2017.

---

[2] The second amended complaint states that the McElligotts went to the "Chicago District Office of the Illinois Department of Human Rights and the Equal Employment Opportunity Commission." Doc. 28 ¶ 13. UPS reads this to mean that the McElligotts visited both the IDHR and the EEOC, while it could be read as a visit to one combined office. The McElligotts, in their response, state that the inclusion of the IDHR in this paragraph was in error. *See* Doc. 32 at 6 n.6. Based on this representation and the plausible reading that, in drafting the second amended complaint, recruited counsel understood the office to be a joint office, the Court treats this as one visit to the EEOC office and not two separate visits.

**LEGAL STANDARD**

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

**ANALYSIS**

**I.    Michelle's Title VII Claim (Count I)**

UPS argues that Michelle's sexual harassment and retaliation claim falls outside of Title VII's statutory limitations period because the underlying conduct occurred more than 300 days before Michelle filed her EEOC complaint. "[T]o bring a Title VII claim . . . a plaintiff must file a complaint with the EEOC within 300 days of experiencing the complained-of discrimination." *Swanson v. Vill. of Flossmoor*, 794 F.3d 820, 825 (7th Cir. 2015). UPS terminated Michelle on March 26, 2015, the date of the last alleged discriminatory action UPS took against her. Although Michelle acknowledges that she filed her EEOC complaint more than 300 days after this date, she argues that equitable tolling should apply.

"The timely filing of an EEOC charge is not a jurisdictional prerequisite to filing a federal lawsuit, but rather, is more akin to a statute of limitations and subject to . . . equitable tolling under appropriate circumstances." *Hentosh v. Herman M. Finch Univ. of Health Scis./The Chicago Med. Sch.*, 167 F.3d 1170, 1174 (7th Cir. 1999). "Equitable tolling 'often focuses on the plaintiff's excusable ignorance of the limitations period and on the lack of prejudice to the defendant.'" *Id.* (quoting *Wheeldon v. Monon Corp.*, 946 F.2d 533, 536 (7th Cir. 1991)). Equitable tolling may apply where the EEOC "affirmatively induced" or "lulled" Michelle into not filing a charge, *Schroeder v. Copley Newspaper*, 879 F.2d 266, 271 (7th Cir. 1989), or engaged in "[m]isleading conduct," *Early v. Bankers Life & Cas. Co.*, 959 F.2d 75, 81 (7th Cir. 1992); *see also Alsaras v. Dominick's Finer Foods, Inc.*, 248 F.3d 1156 (Table), 2000 WL 1763350, at *2 (7th Cir. Nov. 22, 2000) ("This circuit, as well as others, has held that when an administrative agency misleads a complainant, particularly one who is proceeding pro se, equitable tolling may be justified."). To the extent equitable tolling does apply, "tolling does not provide a plaintiff with an automatic extension of indefinite duration; the plaintiff must file his charge with the EEOC within a reasonable period of time." *Hentosh*, 167 F.3d at 1175.

Michelle alleges that after UPS terminated her on March 26, 2015, she went to the EEOC in July 2015 to file a charge. This visit occurred within the 300-day window. But Michelle claims that the individual she met with at the EEOC told her that she could not file a charge with the EEOC without additional evidence and that she needed to proceed instead before the NLRB because she was a union member. Based on this erroneous information, Michelle pursued claims before the NLRB, as did Thomas after his termination, and only after both of their cases concluded before the NLRB did they return to the EEOC in March 2017, at which time they received different information and filed charges.

"[T]he issue of equitable tolling is fact-intensive and ordinarily requires reference to matters outside the pleading; it therefore generally is more appropriately applied at the summary judgment or trial stages of litigation rather than the pleading stage." *Alsaras*, 2000 WL 1763350, at *2. Here, Michelle has sufficiently alleged facts to suggest that the EEOC made erroneous representations to mislead her into believing she could not file an EEOC charge and also that she had to pursue all claims through the NLRB. *See id.* at *3 (allowing complaint to proceed where plaintiff alleged that she visited the EEOC shortly after her termination, that EEOC representative told her she should first pursue a grievance with her union, and that if she then decided to file an EEOC charge, she had a year to do so). Although UPS asks the Court to find that Michelle did not act within a reasonable period of time once her NLRB charge was resolved because her NLRB appeal concluded in February 2016 and she waited over a year after that point to return to the EEOC, the questions surrounding this determination are fact-intensive and the Court cannot make that determination at this time. UPS's request would require the Court to weigh competing interpretations of the facts without a complete record, which the Court cannot do on a motion to dismiss. Thus, the Court defers a definitive resolution of this issue until the parties develop a more complete evidentiary record, allowing Michelle to proceed to discovery on her sexual harassment and retaliation claim.

## II. Thomas' Title VII Claim (Count II)

Next, UPS argues that Thomas' Title VII retaliation claim fails because he did not exhaust his administrative remedies. Although Thomas filed a formal charge alleging retaliation in March 2017, he "may bring only those claims that were included in [his] EEOC charge, or that are 'like or reasonably related to the allegations of the charge and growing out of such allegations.'" *Geldon v. S. Milwaukee Sch. Dist.*, 414 F.3d 817, 819 (7th Cir. 2005) (quoting

6

*McKenzie v. Ill. Dep't of Transp.*, 92 F.3d 473, 481 (7th Cir. 1996)). This requirement is intended to provide UPS with notice of the nature of the claims against it and provide the EEOC and UPS with the opportunity to settle the dispute before the parties commence litigation. *Id.* An allegation in an EEOC charge is reasonably related to a federal claim if it involves "the same conduct and implicate[s] the same individuals." *Ezell v. Potter*, 400 F.3d 1041, 1046 (7th Cir. 2005). The relevant inquiry is "what EEOC investigation could reasonably be expected to grow from the original complaint."[3] *Ajayi v. Aramark Bus. Servs., Inc.*, 336 F.3d 520, 527 (7th Cir. 2003) (quoting *Novitsky v. Am. Consulting Eng'rs, L.L.C.*, 196 F.3d 699, 701 (7th Cir. 1999)).

In filing his EEOC charge, Thomas checked the box for retaliation. In his narrative, he stated that he "was subjected to different terms and conditions of employment, including, but not limited to, being subpoenaed for an investigation." Doc. 30-3 at 2. He claims he "complained to no avail" and that on October 4, 2016, he "was discharged for a violation that other employees were not discharged for." *Id.* Thomas now complains that UPS retaliated against him for complaining to UPS management regarding its discriminatory practices against Michelle. But because an employer may retaliate in many ways, Thomas' claim of retaliation in his EEOC charge is not automatically reasonably related to his retaliation claim in the second amended complaint merely because they both are claims for retaliation. *See Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 501–02 (7th Cir. 1994) (finding that claim of sex discrimination based on practice of assigning female employees to unprosperous sales routes was not actionable where EEOC charge was based on different discriminatory conduct, the practice of requiring employee to pay clients' insurance premiums). Indeed, UPS argues that, even though Thomas raised a

---

[3] What the EEOC actually considered in its investigation, however, is not relevant to the Court's analysis. *See Rush v. McDonald's Corp.*, 966 F.2d 1104, 1112 (7th Cir. 1992) ("[T]he appropriate standard for measuring exhaustion is not those charges that the EEOC in fact considered, but those that were brought to its attention."). Here, it is not clear that the EEOC actually proceeded with an investigation, where Thomas received his right to sue letter on March 6, 2017, only several days after he filed his charge.

claim of retaliation in his EEOC charge, his allegations of retaliation in the second amended complaint are beyond the scope of those contained in the EEOC complaint because they do not describe the same conduct or implicate the same individuals.

Thomas, however, claims that his allegations of retaliation for complaining about Michelle's termination could have reasonably grown out of his EEOC charge, given the fact that he allegedly told the EEOC interviewer that he complained to UPS management about the discriminatory practices against Michelle and that UPS retaliated against him as a result. Because the Court's inquiry should focus on what the EEOC's investigation of the original complaint would likely become, *Ajayi*, 336 F.3d at 527, Thomas argues that providing these details to the EEOC interviewer demonstrates that the EEOC would have investigated not only the retaliation he specified in the written charge but also the retaliation he detailed in his oral interview.

Although courts have sometimes looked beyond the EEOC charge to determine whether a plaintiff intended for the agency to investigate certain allegations, these allegations have all been made in writing. *See Vela v. Vill. of Sauk Vill.*, 218 F.3d 661, 664 (7th Cir. 2000) (collecting cases and noting that the outside allegations considered have all been made in writing). The Seventh Circuit has held that "an oral charge, . . . not reflected in nor reasonably related to the charge actually filed, is not a sufficient predicate for a [Title VII] claim." *Id.* at 665 ("No case suggests that an oral statement to an agency representative is adequate, and notice of such a statement cannot be expected to reach the employer."); 42 U.S.C. § 2000e-5(b) (EEOC charges must be in writing and under oath). Therefore, the Court cannot consider the oral allegations of retaliation that Thomas made to the EEOC interviewer. *See Mirza v. The Neiman Marcus Grp., Inc.*, 649 F. Supp. 2d 837, 855 n. 15 (N.D. Ill. May 6, 2009) ("[W]hen a plaintiff makes an *oral*

allegation to the EEOC that is omitted from a subsequent charge, the plaintiff may not bring a lawsuit based on the omission."); *Othon v. LG Elecs. USA, Inc.*, No. 08 C 878, 2008 WL 4287626, at *4 (N.D. Ill. Sept. 15, 2008) (court could not consider alleged oral complaints to investigator in determining whether claims had been exhausted). And here, Thomas' EEOC charge includes no mention of the conduct relevant to his retaliation claim—his complaints to UPS management about Michelle's termination. Nor can such conduct be inferred from the vagueness of the language used in the EEOC charge, as Thomas appears to want the Court to do by arguing that his use of "including, but not limited to" in the charge should be read broadly to put the EEOC and UPS on notice of this conduct. Because the Court cannot find that his Title VII claim is reasonably related to the allegations made in his EEOC charge, Thomas did not exhaust his administrative remedies, requiring dismissal of his retaliation claim.[4]

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part UPS' motion to dismiss [29]. The Court dismisses the retaliation claim (Count II) from the second amended complaint without prejudice.

Dated: March 2, 2018

SARA L. ELLIS
United States District Judge

---

[4] Although it is unlikely that Thomas can exhaust his administrative remedies at this stage, the appropriate remedy here is dismissal of the claim without prejudice, leaving Thomas "free to refile his suit when and if he exhausts all of his administrative remedies." *Greene v. Meese*, 875 F.2d 639, 643 (7th Cir. 1989).